Steven M. Lucks
S. Aaron Loterstein
FISHKIN LUCKS LLP
500 7th Avenue
8th Floor
New York, NY 10018
646.755.9200
slucks@fishkinlucks.com
aloterstein@fishkinlucks.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INVENTIA HEALTHCARE LIMITED, | Civil Action No.: 1:22-cv-07254 |
| Plaintiff, | |
| v. | COMPLAINT |
| APNAR PHARMA LP, | |
| Defendant. | |

Plaintiff, Inventia Healthcare Limited, formerly known as Inventia Healthcare Private Limited ("Inventia" or "Plaintiff"), by and through its attorneys, for its complaint against defendant, Apnar Pharma LP ("Apnar"), alleges as follows:

## NATURE OF CASE

1.      This is an action for damages in connection with Apnar's failure to pay Inventia for products sold to it by Inventia and to remit a share of profits from the products it sold as required by the parties' agreement.

## PARTIES

2.      Inventia is an Indian corporation with its principal place of business in Mumbai, India.

3.      Apnar is a limited partnership organized and existing under the laws of the State of California, with its principal place of business in Chino, California.

4.      Upon information and belief, Apnar's managing partner is Dharmesh Patel, and its only general partners are Naswa, Inc. and Mahantam, Inc.

5.      Upon information and belief, Patel resides in Chino, California, and Naswa, Inc. and Mahantam, Inc. are corporations organized and existing under the laws of the State of California, with principal places of business in Chino, California.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(2), because it is between a citizen of a state and a citizen of a foreign state, and the amount in controversy in this matter, exclusive of interest and costs, exceeds $75,000.

7.      This Court has personal jurisdiction over Apnar by virtue of, among other things, section 13.8 of the Development, Supply and Distribution Agreement by and between Inventia and Apnar (the "Agreement"), described in more detail below, pursuant to which Apnar "consent[ed] to the exclusive jurisdiction of the state or federal courts of the State of New York, as may be appropriate, for any and all disputes that relate to or arise out of this Agreement and the terms and obligations contained herein."

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b).

## FACTS

### The Agreement

9.      Inventia is a developer and manufacturer of pharmaceutical products.

10.     Apnar markets, sells, and distributes pharmaceutical products.

11.     On or about August 2, 2017, Inventia and Apnar entered into the Agreement,[1] whereby Inventia granted Apnar the exclusive right to market, distribute, and sell generic Buspirone tablets of varying dosages (the "Products") for a five-year term.

12.     Under the Agreement, Inventia would be solely responsible for developing each dosage of the Product and for filing with the FDA an abbreviated new drug application ("ANDA"), which would be filed and held in Inventia's name.

13.     While Inventia would develop the Products and obtain the necessary regulatory approvals, Inventia granted to Apnar the exclusive right "during the term of [the] Agreement . . . to market, distribute, and sell the Product . . . in the territory of United States of America and its territories, possessions and the Commonwealth of Puerto Rico, subject to the conditions of [the] Agreement."  Agreement § 3.1.

14.     Per the Agreement, Apnar would place purchase orders for the Products, which Inventia would manufacture and deliver.  *Id.* § 5.2.

15.     With respect to any Product, once title transferred to Apnar, Inventia was to issue invoices, which Apnar was required to pay within 90 days.  *Id.* § 6.5.

16.     In purchasing the Products, Apnar agreed to pay a "Transfer Price"—which was the "Cost of Goods Sold" (as separately defined) plus a specified percentage (originally 10%, later reduced to 7.5%).  *Id.* § 6.2

17.     If Apnar disputed any invoice, Apnar was required to "notify Inventia that [Apnar] disputes the accuracy of such invoice and specify the particular respects in which such invoice is inaccurate."  § 6.6.

---

[1] On or about August 9, 2018, Inventia and Apnar entered into the First Addendum to Development, Supply and Distribution Agreement (the "Addendum"), whereby the parties amended certain definitions under the Agreement.

3

18.    In addition to agreeing to pay for Products that it purchased, Apnar agreed to a profit-sharing arrangement for the Products that it sold.

19.    Specifically, Apnar agreed to provide Inventia quarterly written statements with itemized sales and profit information for the preceding quarter.  Along with each quarterly statement, Apnar was required to provide payment of 50% of that quarter's Net Profit (as defined in the Agreement). *Id.* §§ 6.4, 6.7.

20.    Pursuant to section 6.8 of the Agreement, the parties were required to "maintain accurate records and books of costs and sales for the Products."

21.    The Agreement was to last for a five-year term, from the date of the first commercial sale of the Product.  Section 10.2 of the Agreement, however, authorized either party to terminate for various reasons, including, among other grounds, due to a material breach that remained uncured within thirty days after receipt of written notice.

22.    Under section 10.3 of the Agreement, Inventia agreed that, in the event of termination or expiration of the Agreement, it would "immediately declare . . . the stock of all active Ingredients, excipients, any other raw materials,[2] finished Products, Products in the process of manufacture, which are manufactured pursuant to any orders placed by [Apnar] and the stock of Packing materials . . . carried on behalf of [Apnar]."  Apnar agreed to pay the value of the stock declared by Inventia, and that in the event of termination or expiration of the Agreement, it would be required to pay all outstanding invoices and to "continue to distribute the Products in its inventory until such inventory has been depleted and shall share the profits derived therefrom in the agree ratio of 50:50."

---

[2] "Raw Materials" is defined under the Agreement as "API [the active pharmaceutical ingredient of Buspirone], any excipient and component materials used to Manufacture the Products."

23.     In addition, under section 10.3(iii) of the Agreement, expiration or termination of the Agreement "shall not release either Party hereto from any liability that at such time has already accrued or that thereafter accrues from a breach or default prior to such expiration or termination."

### Apnar's Defaults and the Termination of the Agreement

24.     Between November 2018, and July 2019, Apnar sent to Inventia Purchase Order Nos. 107, 108, 109, and 110 for the Products in various dosages.

25.     In accordance with those Purchase Orders Inventia delivered to Apnar the requested batches of Product through a series of shipments, each accompanied by an invoice.

26.     Apnar accepted each batch of Products and did not dispute or contest any aspect of the Products that were delivered or the invoices that were issued.

27.     Beginning in mid-2019, Apnar began failing to timely pay the invoices as required by the Agreement.  It also failed to timely provide quarterly profit-sharing statements and to make the accompanying profit-sharing payments.

28.     Beginning in October 2019, Inventia repeatedly notified Apnar that it was in breach of its payment obligations under the Agreement.

29.     In November 2019, Apnar reassured Inventia that it would pay all outstanding amounts by early 2020.

30.     Between December 2019 and May 2020, Apnar made interim payments towards its outstanding obligations, but it failed to pay the balance of the amount owed to that point, which consisted of payment for Products purchased and profit-sharing amounts owed

31.     By letter dated May 5, 2020, Inventia terminated the Agreement due to Apnar's repeated and continuing defaults, including Apnar's failure to (a) remit payments towards the pending invoices, (b) provide Inventia quarterly profit statements, and (c) remit profit sharing

payments based on those reports/statements for four quarters.  Inventia advised Apnar that it was required to pay to Inventia the outstanding amounts towards the pending invoices; pay to Inventia the profit share and costs related to the stocks of active ingredients or other raw materials manufactured or procured by Inventia pursuant to Apnar's purchase orders; and account for the remaining in Apnar's inventory and, once depleted or sold, share profits derived therefrom.

32.     In response to Inventia's termination notice, Apnar began making payments towards amounts owed, and Inventia and Apnar engaged in months of discussion in an effort to resolve Apnar's outstanding balance.

33.     Those efforts proved unsuccessful, as Apnar continued to fail to satisfy its obligations under the Agreement.

34.     By letter dated September 19, 2020, Inventia wrote to Apnar as a continuation of its previous termination notice, reiterating its prior demands to Apnar.  Inventia advised Apnar that Inventia was obligated to supply, and Apnar was required to pay for, twelve batches of Product in accordance with Apnar's Purchase Order No. 110, which pre-dated Inventia's termination of the Agreement.

35.     In late September and October of 2020, to fulfill Apnar's Purchase Order No. 110, Inventia delivered to Apnar the twelve remaining batches of Product under Purchase Order No. 110, with accompanying invoices.

36.     Apnar again accepted the batches of Product and invoices and did not dispute any aspect of the Product that was delivered or the invoices that were issued.  Nevertheless, Apnar failed to pay for those batches of Product.

37.     Throughout 2020 and 2021, the parties exchanged emails and other correspondence regarding Apnar's failure to comply with the Agreement, including its failure to pay outstanding

invoices and profit-share amounts, and to provide profit-sharing statements required by the Agreement.

38.     To date, Apnar owes Inventia $547,576.68 for shipment of Products pursuant to invoice number 7520190076, dated May 14, 2019 (issued under Purchase Order 107), and invoice numbers 7520200402, dated September 25, 2020; 7520200430, dated September 30, 2020; 7520200431, dated September 30, 2020; 7520200432, dated September 30, 2020; 7520200544, dated October 29, 2020; and 7520200552, dated October 31, 2020 (all issued under Purchase Order 110).

39.     In addition, Apnar owes quarterly profit-sharing amounts of no less than $421,368, for the second half of 2019 and 2020.

40.     Moreover, for the first half of 2021, Apnar provided profit-sharing quarterly statements (relating to the sale of Products purchased as part of Purchase Order No. 110) that were insufficiently detailed to enable Inventia to assess their accuracy and completeness.  Inventia requested from Apnar detailed profit statements, as required by the Agreement, including by email in December 2021.

41.     At a minimum, the deficient profit-sharing statements supplied by Apnar reveal that for the first half of 2021, it owes no less than $219,381.

42.     Finally, pursuant to section 10.3 of the Agreement, Apnar is required to reimburse Inventia approximately $1,187 for stock of unused ingredients and raw materials procured by Inventia towards Purchase Orders, which ultimately needed to be destroyed.

## COUNT I
### (Breach of Contract)

43.     Inventia repeats the allegations in the preceding paragraphs as if fully stated here.

44.     Inventia has performed its obligations under the Agreement.

45.     Pursuant to section 6.5 of the Agreement, Apnar was required to pay invoices from Inventia "within **ninety (90)** days from the date of the Invoice" (emphasis in original).

46.     Inventia sold to and invoiced Apnar for Products to fulfill Apnar's purchase orders. Despite taking delivery of the Products and not disputing the invoices, Apnar has failed to pay at least $547,576.68.

47.     Separately, sections 6.4 and 6.7 of the Agreement required Apnar to provide to Inventia written reports and statements itemizing its net sales and net profits and to make quarterly profit-sharing payments based on those written reports and statements.

48.     While Apnar has provided profit-sharing statements for the period July 2019 through 2020, Apnar has failed to make the corresponding profit-sharing payments, totaling $421,368.

49.     In addition, Apnar has provided insufficiently detailed profit-sharing statements for the first half of 2021, with no corresponding profit-sharing payment.  At a minimum, the deficient profit-sharing statements supplied by Apnar reveal that for the first half of 2021, it owes no less than $219,381.

50.     Apnar also owes Inventia approximately $1,187 for stock of unused ingredients and destruction cost of raw materials procured by Inventia towards Purchase Orders, as provided by section 10.3 of the Agreement.

51.     In failing to remit payment for invoices, Inventia's profit share, and unused stock, and in refusing to provide contractually required detailed profit-sharing statements for the first half of 2021, Apnar has materially breached the Agreement and has damaged Inventia in an amount to be determined at trial but, in all events, no less than $1,189,512, plus interest, costs, and expenses.

## COUNT II
### (Account Stated)

52.     Inventia repeats the allegations in the preceding paragraphs as if fully stated here.

53.     Pursuant to the Agreement, Inventia sold the Products to Apnar, which Apnar accepted without complaint.

54.     The Products that Inventia sold were reflected in the invoices that Inventia sent to Apnar.

55.     Apnar received and retained the invoices without objection.

56.     Apnar has not disputed the amount it owes Inventia for the Products as reflected in the invoices.

57.     Apnar has failed to pay the past due balance in the invoices of $547,576.68, plus interest.

58.     As a result of Apnar's actions, Inventia has been damaged in an amount to be determined at trial, but, in all events, no less than $547,576.68, plus interest, costs, and expenses.

## COUNT III
### (Unjust Enrichment)

59.     Inventia repeats the allegations in the preceding paragraphs as if fully stated here.

60.     As an alternative basis for recovery, in retaining the Products and failing to pay for them, Apnar has been enriched at Inventia's expense, and it is against equity and good conscience to permit Apnar to retain that with which it has been enriched.

61.     As a result of Apnar's conduct, Inventia has been damaged in an amount to be determined at trial.

**WHEREFORE,** Inventia demands judgment in Inventia's favor and against Apnar (i) for damages in an amount to be determined at trial but, in all events, no less than $1,189,512, plus

interest; (ii) ordering Apnar to produce contractually required profit-sharing statements with accompanying profit-sharing payments; (iii) for costs and disbursements; and (iv) for such other relief in Inventia's favor and against Apnar as this Court deems just and proper.

Dated: New York, NY
      August 25, 2022

By: */s/ Aaron Loterstein*
    Steven M. Lucks
    S. Aaron Loterstein
    500 7th Avenue
    8th Floor
    New York, NY 10018
    646.755.9200
    slucks@fishkinlucks.com
    aloterstein@fishkinlucks.com
    *Attorneys for Plaintiff*